Christopher Trowbridge, Plaintiff Appellant, Midwestern Cattle Marketing, LLC. All of the causes of action raised in this appeal have fact issues that need to be heard by a jury. The record is replete with facts demonstrating that Legend Bank knew it was holding funds belonging to Midwestern Cattle and that Legend Bank knew or should have known that the lines committed a fraud. Even the district court acknowledged in its first order, clearly, at some point, defendants should have known that Tony's conduct constituted a tort. And arguably, there is a fact issue as to whether it did know. Those facts, those disputed facts, are facts that should have been heard by a jury. And when viewing those facts in the light most favorable to Midwestern Cattle, this case would have survived summary judgment. First, with respect to money had and received, the district court erred in finding that MCM's negligence barred MCM's money had and received claim. Unclean hands does not defeat a money had and received claim. Instead, it creates a fact issue to be decided by the jury after balancing the equities. You say by the jury. Money had and received is an equitable claim, right? And unclean hands is an equitable defense. Is that right? Well, unclean hands is a defense that's considered by the jury in considering a money had and received claim. Well, under Texas, this is kind of getting sidetracked, but under Texas law, there really is no law on equity divides. So in Texas courts, you can get a jury on equitable claims. But I thought in federal court, the Supreme Court has said federal law controls when you get a jury. And for equitable claims in federal diversity cases, there is no jury. It really doesn't go to whether this should be reversed or not to go forward. It just has to do with whether you keep saying there'd be a jury. I'm not so sure about that. Well, in this court, in Bank of Saipan, rejected unclean hands as a complete bar to recovery when the defendant claimed that the plaintiff caused its own injury. And that reversed judgment as a matter of law, which would then have made that cause go to a jury. So and that was a diversity jurisdiction case. So but in here, the summary judgment did raise genuine issues of material fact regarding the equities between Midwestern cattle and legend, which made summary judgment improper. The Bank of Saipan case in this court cited Ligon v. E.F. claim when the claimant made an innocent mistake, regardless of how, quote, stupid or negligent he may have been. And because the parties presented conflicting evidence of each other's fault in establishing the lion scheme, the district court should have allowed a jury to decide the case. Legend insisted that MCM had unclean hands because MCM negligently contributed to its own harm by providing the lions with its checkbook and signature stamp. However, MCM showed that legend knew the lions were using legend to kite checks and that despite knowledge of the check kiting scheme, legend bank allowed the scheme to continue. MCM showed that legend had a duty to detect and report check kiting but failed to do either. And MCM's summary judgment evidence showed that allowing the kite to continue increased the magnitude of the advances made to cover the overdrafts. Legend offered at most evidence of MCM's negligence, but it did not offer evidence of unjust conduct. Additionally, legend bank argues that MCM's money had and received claim is barred by the UCC. However, the UCC does not displace common law money had and received claims. This court in Peerless Insurance Company v. Texas Commerce Bank in 1986 determined that the UCC does not displace a common law money had and received claim. Also via Real v. First Presidio Bank, a western district of Texas claim reached the same conclusion after analyzing the judicial interaction between money had and received claims and the UCC. Legend also argued that MCM was unable to show proof of ownership of the funds. However, in via Real, the district court expressly rejected the view that a claimant must prove ownership in addition to establishing that the other party holds money that in equity and good conscience belongs to the claimant. And overall, the Texas Supreme Court has rejected technical rules and formalities with respect to money had and received claims. Point being, on MCM's money had and received claims, it's similar to Bank of Saipan. Bank of Saipan had transferred its own money. So did MCM in this case. Thereby it satisfies a requirement that the claimant have a claim to the funds. In other words, a person who transfers funds on account of the fraud of another may sue that recipient under money had and received. In any event, the district court based its supplemental opinion concerning MCM's fraudulent transfer claim on the conclusion that MCM did own the transferred funds. Therefore, the district court even contained a finding that MCM owned the funds at issue. Next, with respect to unjust enrichment and constructive trust, the district court based its dismissal of MCM's unjust enrichment count and prayer for constructive trust on what it wrongly viewed as pleading technicalities. With respect to pleading, in addition to constructive trust in this claim, I mean, maybe in this case, I mean, you might be right, you're entitled to it, but you're going up against a bank. I mean, if you win a judgment, they're going to be able to pay. I mean, what a constructive trust allows you to do is trace specific property and say, I want that car I gave someone, you know, and it's usually an issue when you don't think someone can otherwise cover a judgment. You want to trace the specific property. I mean, why do you really need a constructive trust here to trace these specific funds? Well, under the global theory of restitution, constructive trust is a permitted remedy, and we are able to trace these funds to the bank. I see that. I just don't see why, I mean, under money had and received, you get a judgment. Presumably, they can pay it, but they're a bank. But anyway. Well, we were able, in the complaint, we actually made a claim based on what we called unjust enrichment, but we identified four specific payments that then the bank utilized those funds for. So we were, in an effort, Midwestern Cattle was seeking a constructive trust over those four specific payments out of which came, or the source of which were Midwestern Cattle's funds. Unjust enrichment was ruled by the district court as not being a, dismissing it because it viewed it as a mere theory of liability and not as a separate and distinct claim. However, the Texas Supreme Court has consistently recognized unjust enrichment as an independent basis for recovery, and there was both an unjust enrichment claim asserted as a cause of action, money had and received as a cause of action, and then as discussed, there was a constructive trust remedy asked for. And with respect to tracing, the money that was used to satisfy the Lions debts came from Midwestern Cattle. The tracing facts are undisputed in the record. It's clear in the record that the money that came from MCM's checks went to satisfy overdraft and other identified debts. MCM's complaint identified those payments made, and a payment of money can be subject to a constructive trust under the Restatement of Restitution in Texas law. With respect to it being a disputed fact upon which reasonable minds can differ, the reason we're saying, yes. Genuine dispute. Genuine dispute of material fact for summary judgment. You said a disputed fact. It's got to be a genuine disputed material fact for you to avoid summary judgment. Yes, Your Honor. And in fact, we signed it to the Bank of America versus Prize Energy Resources, which held that genuine issues of material fact required a denial of a motion for summary judgment addressing an unjust enrichment claim. And here, the facts supported in the record did show genuine issues of material fact. It showed that the checks came from Midwestern Cattle. They went to Legend Bank, and Legend Bank used those funds to satisfy the Lions debts. So we believe that we satisfied that standard. And none of the cases, in fact, cited by Legend on this point were summary judgment cases. They were all—so CF Edwards versus Midcontinent Office Distributors, that affirmed a judgment rendered after a bench trial, Hunter versus Price, Quebeca, that affirmed a jury verdict on unjust enrichment, Aetna Casualty Insurance Company, that affirmed a judgment rendered after a bench trial, and then Stewart Title was a class certification issue. So Legend—the funds here satisfied genuine issues of material fact and should have been dismissed on summary judgment. Now Legend also argues that they proved detrimental reliance, but the court itself found no detrimental reliance in its initial order granting Legend's motion. District Court wrote, arguably, the funds in the Legend account belonged to plaintiff as a purportedly represented proceed to the sale of plaintiff's cattle. And there's no reason to believe that defendant changed its position to its detriment, i.e., defendant will be not harmed by returning the offset funds to plaintiff because it will be in the same position where it stood at the time of deposit. Then in the second order, the District Court mentioned Legend's arguments generally without identifying any particular one. So it never expressly mentioned detrimental reliance or past judgment on that. Next, with respect to negligence, the District Court erred in determining that a bank owes no duty to a non-customer. Now, first of all, Judge McBride, at the District Court level, limited his analysis to MCM's initial negligence argument, and that was that Legend failed to comply with its duty to exercise reasonable care in monitoring, detecting, and reporting fraudulent activity. However, the District Court failed to address MCM's alternate negligence claim, that when Legend detected the fraud, it had a duty to stop it or at least not continue to enable it. What's your best case for that? Sure. United States Fidelity and Guarantee versus Adu and Lobitt. It's been the law for over 100 years in Texas. It's a Texas Supreme Court case. And in that case, the Texas Supreme Court recognized a duty on the part of a bank to a non-customer. Quote, if the bank has notice or knowledge that a breach of the trust is being committed by an improper withdrawal of funds, or if it participates in the profits or fruits of the fraud, then the bank will undoubtedly be liable to the true owner of the funds. So that was in 1911. Is that a case with a fiduciary relationship? Even though it wasn't a customer, they owed a fiduciary duty to the people who had benefited from the trust? Yes. That case involved the non-customer had a fiduciary relationship with the customer. And that is the case in this case as well. We pled that there was a trust relationship. Fiduciary relationship that Texas law would recognize between MCM and these folks? Yes. Tony? So, and for that, I would cite the court to Kinsbach-Tool versus Corbett-Wallace Corporation. That's a Texas Supreme Court case in 1942. So the complaint, the relationship, that was alleged. Did Texas really tighten the fiduciary duty rules over the last few decades? I mean, just because they're doing business together, that's a fiduciary relationship? No. No, Your Honor. It has to be more than that, and that's what we alleged. Here, the complaint alleged that MCM gave its checkbook and signature stamp to the Lions so they could sign checks on MCM's behalf after receiving authorization from MCM. The complaint also alleged that Tony Lion provided MCM with pre-signed checks on his side from the legend account signed by Mona Lion. And the complaint also alleged that MCM relied on handwritten invoices presented by the Lions for each of the transactions. In the summary judgment evidence— That all brings up—this goes back, I guess, to the unclean hands, and I understand your argument on it, but what's in the record as to why your client trusted this guy who committed a felony for bank fraud with unmonitored—I mean, it's one thing, oh, I'm going to give the guy a second chance, but then not even monitoring what he's doing with these checks and invoices, not asking to meet this supposed cattle company in Fort Worth that was fictitious? The evidence in the record includes the affidavit of Jason O'Connell that's at—the record at 59. What does he say? And he says, over time, we gained trust in the Lions, and as a result, the size and the frequency of the transactions increased. It's paragraphs 8 and 9, I believe, in that affidavit, and it tells a story how for several years or for over a year, the relationship went smoothly. The checkbook wasn't handed over immediately on day one. It was after years and months and months of sizable transactions. Then it's admitted once they got the checkbook, the size of the transactions sure went up. However, the facts, the complaint both alleged a special relationship and the summary judgment evidence that special relationship. And I'd quote the court to Kinsvach Toole, and to address Judge Costa's question about the term fiduciary, but Kinsvach said, generally speaking, the term fiduciary applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith rather than legal obligations as a basis of the transaction. The terms include those informal relations, informal relations, which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations. I see my time is up. Thank you, Mr. Kovic. You've reserved your rebuttal time. Thank you. Mr. Kirkman. May it please the court and counsel. The UCC unmistakably governs this transaction. Midwestern Cattle has really not contested that proposition throughout its entire case, in its brief, or in any filing before this district judge. There is no question, nor is there a claim, that we did not comply with the UCC in the manner and means by which we handled these checks. I think when this court studies the history of the UCC, it will find that the reason the UCC was set up the way it was, was to allow some solidifying, constant manner and means by which a bank is to handle checks. And again, I emphasize, at the risk of repeating myself, that there is no claim in this case that Ledge and Bank did not comply with the UCC. I thought we had cases, I mean, Coastal Agricultural Supply from 2014. I think there's others that have allowed these money, hadn't received claims against banks, and saying it doesn't conflict. Where are you saying it doesn't conflict with the UCC? In my view, you cannot supplant the UCC with a money hadn't received claim. I'm asking you what our view's been in the past. Well, the Fifth Circuit, you know, Judge Prado wrote an opinion in a check-hiding scheme, not completely similar to this, but sort of similar, where it analyzed the eerie guess analysis that I think this court's... What case? What's the name of it? It's Bank of Franklin. It's cited in the brief. And it is very, it can be very instructive to this court, in my view, because what Judge you have done a million times is this eerie guess analysis. You know, first of all, he said, I can't find a Supreme Court case. It's a Mississippi case, but it's very similar to Texas law. You can't find a Supreme Court case that exactly says the UCC displaces all of these other claims and causes of action that have been asserted. But there are two, arguably four, court of appeals cases that say exactly that. And then, of course... I'm sorry. Go ahead. I'm sorry. And then, of course, the eerie guess analysis, the judge then says, well, what about other jurisdictions? Now, here's the key. When Judge Prado looked at these other cases, and when I think you look at the other Texas cases, the only cases that have been found, I don't care if it's in Texas, it's in Mississippi, in any jurisdiction, that have allowed these other claims or causes of action in a check-hiding situation to be treated different than the UCC is when there is a fiduciary relationship that exists between the customer and the non-customer. I just don't think there can be any conclusion this court can reach other than that legal proposition. That is it in a nutshell. Now, think about this for a minute. The MCM did not plead a fiduciary relationship in this case. They just didn't. But what they have asked you to accept is because they participated in acts such as giving a known criminal a checkbook and letting him write whatever checks he wants, going into business with somebody they knew was a criminal, allowing him to write checks in that checkbook, when it's undisputed, the bank didn't know that. And remember, Tony Lyon, the fraudster, the guy that went to jail for this, isn't the bank's customer. He was the son of two people who were the bank's customers. And think about it a minute. They're claiming, well, what showed a fiduciary relationship were these acts that they entered into with a criminal that the bank had no reason to know. There was no money put in a trust account. There was no fiduciary relationship even pled or established. But to suggest to the court, in my view, that a fiduciary relationship ought to be considered because of what a criminal did with their own client, to me, belies reasonability, particularly when there's absolutely no evidence that the bank knew about it. And when you go back to your eerie guess analysis and you look at these cases and you look at what Judge Prado said, there just is nothing that would allow this court to make any reasonable eerie guess that the court would extend money had and received, constructive trust analysis, to supplant, not supplement, but supplant the UCC. There's just no reasonable conclusion. That's not what Judge McBride said, though, right? He didn't say the UCC supplants a money had and received claim. He just said there was an unclean hands defense. That's how he rejected it. That's one of the things he said. You know, he made an analysis clearly on page 8 of his opinion where he set out the court of appeal, the Texas court of appeals law. A bank does not owe a duty to detect and stop a check-kiting scheme to someone who is not a customer of the bank. He cites those court of appeals cases as the law of Texas. But it's negligence. That's why he rejects the negligence claim. He did not go into an analysis of the supplanting like this court might do in an eerie guess situation. But he clear – and there's another thing I want to point out. When you're applying equitable claims like MCM is trying to do, the standard is abuse of discretion. And I've cited a case to the court in my brief that shows that when you're applying equitable principles like money had and received, like constructive trust, there is an abuse of discretion standard. The court has the ability to make a determination of whether in his judgment, based on the facts and circumstances of the case, a constructive trust should be applied or money had and received should be applied. And the judge did that. It made an analysis. Now, let me talk about unclean hands. There's no question under the law that unclean hands is an offense to an equitable claim. Now, what I perceive MCM's counsel is asking this court to do is instead of applying unclean hands like the law says, he wants you to apply some kind of comparative responsibility analysis. Well, maybe MCM was this, but the bank was this. And that's just not the law. The law is that if the judge determines in his discretion that, in his view, the party that has come into court and asked for relief from the court has unclean hands, then he can refuse to apply these equitable remedies in his discretion. And I respectfully suggest that when this court reviews the record and determines what the evidence of those unclean hands analysis is, it will come to the conclusion that the judge properly applied his discretion. But you should be right if it were just he heard all the evidence and decides there's unclean hands, I'm not going to award any relief. He ruled on summary judgment. He said as a matter of law, without exercising his discretion, just as a matter of law, there was an unclean hands defense established. But I also want the court to understand that the unclean hands evidence was not disputed. It was material, and it was not disputed. A judge has a right to make a determination based on undisputed material facts. There was nothing on that issue, Judge Costa, that could have ever enlightened the court by conducting a jury trial or a bench trial. It just wouldn't have expanded on it. He had the right, there was plenty of briefing, there was affidavits. He made a determination that that is the evidence, that's the material evidence, so there's no dispute. Well, if it's comparative, there's a lot of disputes about whether your client had any negligence or involvement. There was, Judge. But I guess what I'm saying is, given the state of the law, that's really irrelevant. I don't believe that the actions of the client that I represent rose to that. I mean, what they tried to do is say, well, their internal guidelines said this, and they didn't comply with that. Well, of course, as a matter of law, our internal guidelines do not set a standard of care for us. But the point I'm making for summary judgment is that is legally irrelevant, and they can't find one case, absent the establishment of a fiduciary duty relationship, that says to the contrary. There just isn't law. And you know, it makes sense. It makes absolute sense in this case. Think about it a minute. This case involves check-kiting, provisional credits. You know, the bank, every time it provided a provisional credit for one of these checks, it was exposing itself. I mean, why in the world would a bank carry on actions every time by giving a provisional credit when it was at risk? Just the motive for this comparative negligence analysis just makes absolutely no logical sense. The bank wouldn't have done that. And when you talk about equitable claims, you know, one of the claims that they make is this constructive trust. Well, I think the judge made an analysis of, you've got to establish what it is that you're trying to latch the constructive trust to. This was a general deposit account for the Lyons. And remember, it's Owen and Mona Lyon with the account, not Tony Lyon, who is the undisputed broadster in the case. And funds that went into that account were unrestricted, and you can't point to specific funds. Now, there were some allegations of some smaller amounts of funds, less than a couple hundred thousand dollars, where they claimed, well, we traced this and traced that. But again, it's an unrestricted deposit account. And unless you can specifically attach a specific piece of property, the constructive trust theory just does not apply. And this all comes down, in my judgment, to a question of whether this court is going to allow these kinds of claims to displace the UCC. There's nothing unique about this case, any different than what Judge Brado relied upon and analyzed. Mississippi law is not materially different than Texas law. I mean, there's just got to be some court that allows the banks to reasonably rely on what Article IV says when they handle transactions. And without that guidance from this court, what is a bank to do? How is a bank to deal with customers? Every time they turn around, they're going to say, well, I don't know about this. I've got some liability to this non-customer. Remember, it's a non-customer with absolutely zero relationship with this bank that seeks the relief from this court that it seeks. And they're trying to throw the duty off of themselves and onto somebody else. To stand up here and say, well, as between two innocent parties, you ought to apply these equitable rules. Well, with all due respect, to suggest that MCM was an innocent party when it dealt with a fraudster that it knew was not a customer of the bank is just not reasonable. And I do not think that rises to the level to allow this court to somehow displace or supplant Article IV of the UCC and put any liability on the bank. I mean, all the bank was doing was making some kind of minimal profit from banking transactions by collecting non-sufficient funds. It's not that they kept money from themselves or they lost money. This was customers' money. They were just serving as a conduit when they provide the provisional credit. But they do get these millions of dollars from MCM that MCM is basically out because of the fraud. But it's not the bank's money. It was just somebody put the money in. There's no fiduciary relationship. And I want to also emphasize again, there's no pleading fiduciary relationship. That might change this whole circumstance. Not only is there pleading, there's not any evidence in the summary judgment evidence that establishes that there was any kind of fiduciary relationship. And I hearken back to what I said earlier. How can they come in here and say, we did these things, like we trusted this criminal that we knew was a criminal, we gave him our checkbook, to say that establishes a fiduciary relationship? And to go beyond that and say, well, you should have known that. We had no idea. There is zero evidence in this record, Judge, zero evidence that we had any knowledge that for MCM. Zero. We didn't know that. How is that supposed to establish any kind of knowledge in our part of any, quote, fiduciary relationship? I do not believe that is what Article 4 contemplated when it set up these systems. I just, it is, when you have a bank that has unmistakably complied with Article 4 in this context, I just don't think it reasonable, appropriate, or legally appropriate to apply or supplant Article 4 to allow these money-had-and-received, constructive trust claims that they make. Now, finally. Justice Law, what's your authority that a money-had-and-received claim requires a fiduciary relationship? Well, I go back to the cases I cited initially. In order to get around the Article 4 requirements, you've got to establish a fiduciary relationship. And I do believe that Judge Prado made that analysis in his opinion. Because he didn't say money-had-and-received is gusty, he did not analyze that. But he said in order to supplant, as opposed to supplement the UCC, you've got to have a fiduciary relationship. And so I just don't think the money-had-and-received claim, which again is an equitable claim. And how, you know, is it MCM's position that the judge and the trial court is to say, well, I'll submit a question to the jury, well, do you believe that the bank was unjustly enriched? I mean, that, it's an equitable claim that the judge applies. And I just don't know how they get around the question of or the analysis of the judge has the discretion to make a determination on these equitable claims. And in order to be successful with these claims, it is my view that they have to prove to you that he abused his discretion in doing so. And I really believe that that is the law. That's what we cited in our briefs. And I just do not understand how they can come in here and say, well, let's supplant Article 4 by these equitable claims and show no abuse of discretion by the court. And again, when you back off from it, unjust enrichment, how in the world, if you just take the common sense of it, is the bank unjustly enriched? I mean, they're not the unjust enriched party. The bank was a conduit. And when it complied with Article 4, I don't think it appropriate to allow all these other theories, tort theories, equitable theories, to take the banks out of their Article 4 responsibility. It just, it was somebody else's money running through the bank. And when they cannot show that we violated some, some duty to a non-customer through a fiduciary relationship, I just do not believe that the law contemplates a recovery in this case. There wouldn't be unjust enrichment if it had just stayed in the customer's account, but it's when the bank takes this money that MCM thought it was going to get repaid and uses it for it to repay the loans, the advances. I mean, that's the theory of unjust enrichment. I mean, absolutely, if a bank, stuff's happening in the customer's account, that doesn't enrich the bank at all, you know, other than marginally whatever profit they can make off their deposits through loans. I know, but they're suggesting to you that they should recover damages in that amount. And the bank isn't unjustly enriched. What do you mean, damages? I thought they just want the money back that the bank received to repay against the loans. Well, right, but that's in the form of a damage from the bank. I thought they wanted it, okay, I thought they wanted it as equitable trust, but. Whether it's an equitable trust or a damage recovery, they want over $4 million from the bank when their bank is not unjustly enriched by it. How can you be unjustly enriched, when you think about it, when you've complied with Article 4? I mean, that is just unmistakable in the evidence. And to suggest, well, they should be because they violated their internal guidelines, well, aside from the factual inaccuracies of that, you can't use internal guidelines to show some standard of care from the bank. Anyway, the point being that I do not believe the facts of this case should give this court any pause to somehow completely take away Article 4's UCC requirements that the bank unmistakably complied with. I'd address quickly, maybe just as an academic point, but what is your thought on whether if this does go back for trial, that these equitable claims would be tried to the bench, even if a jury is also trying some of the other claims? Well, I haven't given that a lot of thought, but I can tell you, based on my experience, I don't know how you submit a jury question on that. If it's an equitable claim, this abuse of discretion, I don't know how a court submits a jury issue on that. I don't know. I heard counsel say that they wanted a jury question, but I've never had a case where you submit unjust enrichment or money hadn't received to a jury. I mean, how's he going to say you unjustly enriched? So I guess the short answer to your question is, I don't know how a court would submit that to a jury, because I think it's an abuse of discretion standard. All right. Thank you.  Thank you, Your Honor. First, there were questions initially about whether money hadn't received is an equitable claim or a legal claim. We cite cases in our reply on pages 2 to 3 that indicate and stand for the proposition that money hadn't received is a legal claim controlled by principles of equity. That's the Texas Bank and Trust Company v. Customs. I don't know what that means. Well, that it is, in fact, a legal claim. Both. Controlled by equity. Anyway, I don't believe it. So, and in fact, that case, Texas Bank and Trust, was cited with approval by this court and Bank of Saipan. And Bank of Saipan clearly stated that the UCC does not displace common law money had and received claims, nor, as Mr. Kirkman said, does the Midwest Feeders case stand for that. That's the case that was discussed was Midwest Feeders v. Bank of Franklin. That's this court's opinion in 2008. Notably, there was no money had and received claim asserted in that case. There also wasn't an unjust enrichment or constructive trust claim asserted in Midwest Feeders. Likewise, there was no fraudulent transfer or aiding and abetting. What Midwest Feeders and Justice Prado ruled in that case is there are situations when a bank may owe duties to a non-customer if a bank knows its customer has diverted funds that belong to a non-customer. It was a negligence case. And the court, even though the court was citing and applying Mississippi law, it reviewed a number of cases, North Carolina, New York, and Florida, all of which endorsed that general proposition that the Texas Supreme Court ruled in the U.S. United States Fidelity and Guarantee case that there can be a duty that exists. In the South Central Livestock Dealers, also this court's case in 1977, this court held that there didn't have to be an express trust. And that's why we cited to Kinsbach. Kinsbach outlines that an express trust under Texas law is not required, rather a relationship of trust, an informal relationship can lead to that relationship. The South Central Livestock Dealers and the Steer case were wrongful offset cases in which the bank paid itself money to cover pre-existing debts, but the non-customer claimed a right to the same funds. Here in this case, once Legend learned about the fraud, it had a duty to not participate in the profits or fruits of the fraud, and Legend violated that duty. Now Legend, there's been a lot of statements that MCM knew that Mr. Lyon was a convicted felon. Well, the evidence in the record shows that the bank, Legend Bank, knew that Mr. Lyon was a convicted felon. And there's a significant evidence in the record that Legend Bank still interacted with Mr. Lyon on, at times, almost a daily basis, even though the account was Mr. Lyon's parents,  Mr. Lyon. There's evidence in the record that Legend Bank signed off and initialed all of these checks knowing that they were coming to Midwestern Cattle, being paid to Midwestern Cattle, and coming back from Midwestern Cattle. So that goes to the Bank of Saipan Court's ruling, which is, when you're looking at this issue, it is akin to comparative negligence. You look at what Legend Bank knew or should have known. You look at what MCM knew or should have known. And that's why, ultimately, this does go to a jury. This, there were questions about what would the motive have been for Legend Bank and its president, Brendan Williams, to allow this to go on. Well, the motive is outlined all throughout the record. Brendan and his father had been pasturing cattle of Tony Lyon's for over a month as the overdrafts continued to balloon. And you'll see in the record, in our brief, that they orchestrated advances on the line of credit to allow Mr. Williams' father to be paid on this transaction. When you look at Midwest Feeders, that case, I'd like to point out that even though the case in that, the court in that case ruled there was no duty, you have to look at the facts there. Midwest Feeders' name wasn't on the checkbook in that case. They weren't the payer or the maker of the check. In fact, the bank had never, had no way of knowing who or what Midwest Feeders was. In this case, the facts are much stronger and show that Legend Bank knew exactly who Midwestern Cattle was. Out of time. All right. Thank you, counsel. That concludes the arguments in the case.